

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

MAR 02 2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| **DARIUS BROWN,** | 1:26-cv-02314 |
| **Plaintiff,** | Judge Martha M. Pacold (Civ. Cat 2) |
| | Magistrate Judge Jeffrey T. Gilbert (MJ Cv Cat 2) |
| **v.** | |
| **HC AURORA, LLC, d/b/a HOLLYWOOD CASINO AURORA,** | |
| **Defendant.** | |
| **Case No.** | |

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, DARIUS BROWN ("Plaintiff"), proceeding pro se, brings this Complaint against Defendant HC Aurora, LLC d/b/a Hollywood Casino Aurora ("Defendant" or "Hollywood"), and alleges as follows:

### I. NATURE OF THE ACTION

1.      This is an action for damages and equitable relief arising from Defendant's discriminatory, retaliatory, and defamatory conduct, including the creation and tolerance of a hostile work environment, selective and biased discipline, false accusations of sexual misconduct, and wrongful termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Illinois common law.

2.      Plaintiff is a Black male who repeatedly complained—internally and to Human Resources—about race-based disparate treatment, favoritism, harassment, retaliation, and unfair discipline. Shortly after escalating these concerns, Defendant subjected Plaintiff to a sudden cluster of disciplinary actions, placed him on an unusually prolonged unpaid suspension, and ultimately terminated his employment.

3.      Defendant now attempts to justify Plaintiff's termination by exaggerating and sexualizing disputed workplace incidents, falsely attributing "admissions" to Plaintiff, selectively interpreting surveillance footage, and misrepresenting the timing and substance of Plaintiff's protected complaints.

4.      Defendant's actions were pretextual, retaliatory, discriminatory, and reputationally destructive, and were carried out with reckless disregard for Plaintiff's federally protected rights.

## II. JURISDICTION AND VENUE

5.      This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331.

6.      This Court has supplemental jurisdiction over Plaintiff's Illinois law claims, including defamation, under 28 U.S.C. § 1367, because those claims arise from the same nucleus of operative facts.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant operates in Aurora, Illinois, and the unlawful employment practices occurred in this District.

8.      Plaintiff exhausted all administrative remedies. Plaintiff filed a Charge of Discrimination with the EEOC and received a Notice of Right to Sue dated January 15, 2026.

## III. PARTIES

9.      Plaintiff Darius Brown is an individual residing in Illinois.

10.     Defendant HC Aurora, LLC, doing business as Hollywood Casino Aurora, is an employer within the meaning of Title VII and operates a casino and entertainment facility in Aurora, Illinois.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Protected Status

11.     Plaintiff is a Black male.

12.     Plaintiff began employment with Defendant on or about August 9, 2022, as a Security Agent.

13.     Plaintiff was qualified for his position and performed his job satisfactorily.

14.     Prior to January 25, 2024, Plaintiff had no history of progressive discipline, suspensions, or investigations related to performance or misconduct.

### B. Early Favoritism, Unequal Training, and Disparate Treatment (2023)

15.     Beginning in or around February 2023, Plaintiff began experiencing disparate treatment compared to similarly situated non-Black employees.

16.     Plaintiff was routinely excluded from certain assignments (including rover/control duties) while employees with less tenure were consistently assigned those roles.

17.     Plaintiff received partial and informal training, while non-Black employees received full training and repeated opportunities to perform those assignments.

18.     Plaintiff raised these concerns to supervision in August 2023, questioning why he had not been assigned to certain duties for months despite longer tenure.

19.     Although assignments briefly improved, the discriminatory pattern resumed.

## C. Gossip, Slander, and Hostile Conduct

20.     Throughout 2023, Plaintiff became the subject of workplace gossip, slander, and rumors—much of it sexualized in nature.

21.     Plaintiff experienced:

- Intimidating stares and aggressive body language from supervisors;
- Public reprimands and hostile radio communications;
- Disproportionate scrutiny and surveillance;
- Unequal enforcement of dress-code and equipment policies;
- Sexualized assumptions and invasive inquiries about Plaintiff's personal relationships.

22.     Plaintiff was repeatedly subjected to humiliation while other employees engaging in similar conduct were not disciplined.

## D. July 2023 Allegations and Defendant's Seven-Month Delay

23.     In or around June/July 2023, a coworker made allegations that Plaintiff had made inappropriate comments.

24.     Plaintiff denied these allegations and was told by his supervisor that the matter would be handled and resolved.

25.     Plaintiff was not issued a write-up, not referred to HR, and not informed that additional accusations had allegedly been made.

26.     Despite Defendant now claiming multiple allegations existed, Plaintiff was kept working alongside the accuser for seven months without knowledge of the scope of the claims.

27.     During this time, Plaintiff noticed a shift in how coworkers and supervisors treated him, consistent with the allegations having been discussed behind his back.

## E. December 2023 Escalation and Continued Harassment

28.     In December 2023, Plaintiff was confronted aggressively by a coworker based on gossip and hearsay.

29.     Plaintiff reported this confrontation to supervision, but no corrective action was taken against the coworker.

30.     Instead, Plaintiff continued to experience hostility and intimidation.

## F. January 2024 — Plaintiff's Protected Activity

31.     On January 12, 2024, Plaintiff spoke with Human Resources and reported:

- Harassment;
- Retaliation;
- Favoritism;
- Discrimination;
- A hostile work environment.

32. On January 22, 2024, Plaintiff met in person with HR and explicitly detailed discrimination, harassment, retaliation, favoritism, and unfair treatment.

33. HR documented Plaintiff's complaints and assured Plaintiff the matter would be investigated.

34. On January 29, 2024, Plaintiff requested a follow-up meeting due to escalating concerns.

35. On February 1, 2024, Plaintiff submitted a formal written grievance reiterating these issues.

36. Plaintiff's complaints constitute protected activity under Title VII.

## G. Sudden Discipline Dump — January 25, 2024

37. On January 25, 2024, three days after Plaintiff's HR meeting, Defendant issued Plaintiff:
- A written warning;
- A final written warning;
- Multiple write-ups referencing incidents dating back to June 2023, December 2023, and January 12, 2024.

38. These disciplinary actions were issued simultaneously, without prior progressive discipline.

39. Defendant relied heavily on hearsay, delayed allegations, and selective interpretations of events.

40. Plaintiff disputed the accuracy of the write-ups and requested clarification of policies and evidence, including surveillance footage.

41. Defendant refused to provide meaningful clarification.

## H. Selective Enforcement and Pretext

42. Defendant selectively enforced policies against Plaintiff.

43. Other employees:
- Used company computers for non-work purposes;
- Watched videos;
- Engaged in similar joking or "horseplay";
- Violated dress code policies;

without receiving comparable discipline.

44. Plaintiff worked six consecutive days after January 25, 2024, without incident.

### I. Suspension, Investigation, and Termination

45. On January 31, 2024, Defendant placed Plaintiff on unpaid suspension pending investigation, barring him from the premises.

46. Plaintiff was not provided a written notice or specific explanation at the time of suspension.

47. Defendant prolonged the investigation for nearly one month, an unusually long suspension according to Plaintiff's coworkers.

48. During the investigation, Defendant:

- Refused to allow Plaintiff to view surveillance footage;
- Relied on disputed "admissions" Plaintiff denies making;
- Sexualized and exaggerated alleged conduct;
- Interviewed predominantly non-Black witnesses;
- Failed to interview at least one similarly situated Black male employee.

49. Defendant attributed to Plaintiff statements he denies making, including claims that Plaintiff "jokingly admitted" misconduct.

50. Defendant described surveillance footage in inflammatory terms inconsistent with Plaintiff's account.

51. On February 26, 2024, Defendant terminated Plaintiff's employment.

### J. Defamation and Reputational Harm

52. Defendant published false statements asserting Plaintiff engaged in sexual misconduct, including allegations of improper touching and sexualized behavior.

53. Defendant falsely attributed "admissions" to Plaintiff.

54. These statements were communicated within management and HR and used as justification for termination.

55. Plaintiff's reputation was severely damaged, coworkers treated him differently, and Plaintiff lost his employment.

56. Accusations of sexual misconduct constitute defamation per se under Illinois law.

### V. EEOC EXHAUSTION

57. Plaintiff timely filed a Charge of Discrimination with the EEOC.

58. Defendant submitted a position statement containing disputed factual claims,

exaggerations, and mischaracterizations.

59. The EEOC issued Plaintiff a Right to Sue letter on January 15, 2026.

## VI. CLAIMS FOR RELIEF

### COUNT I — RETALIATION (Title VII)

60. Plaintiff engaged in protected activity.

61. Defendant knew of Plaintiff's protected activity.

62. Defendant subjected Plaintiff to adverse actions, including stacked discipline, suspension, and termination.

63. Temporal proximity and Defendant's conduct establish causation.

### COUNT II — RACE DISCRIMINATION (Title VII)

64. Plaintiff is Black.

65. Plaintiff was treated less favorably than similarly situated non-Black employees.

66. Defendant's selective enforcement, biased investigation, and termination were motivated by race.

### COUNT III — HOSTILE WORK ENVIRONMENT / HARASSMENT (Title VII)

67. Plaintiff was subjected to severe and pervasive harassment.

68. Defendant failed to take corrective action.

### COUNT IV — DISCRIMINATORY AND RETALIATORY TERMINATION (Title VII)

69. Defendant's stated reasons were pretextual.

70. The plaintiff was terminated due to discrimination and retaliation.

### COUNT V — DEFAMATION (Illinois Law)

71. Defendant published false statements of sexual misconduct.

72. Statements were false, harmful, and defamatory per se.

## VII. DAMAGES

73. Plaintiff suffered:
- Lost wages and benefits
- Emotional distress, Humiliation
- Reputational harm
- Economic losses.

**74. Defendant acted willfully and maliciously.**

## VIII. PRAYER FOR RELIEF (ALL COUNTS)

As a direct and proximate result of Defendants unlawful misconduct, Plaintiff, DARIUS BROWN then and there have suffered severe and permanent damages including but not limited to emotional distress, reputational harm, financial losses, anxiety, humiliation and violations of his civil rights.

WHEREFORE, the Plaintiff DARIUS BROWN respectfully requests judgment in favor of Plaintiff and Compensatory damages against Defendants severally in the amount of $300,000, punitive damages to deter future misconduct, Back pay and Front pay, the cost of this lawsuit and grant such other relief as this Court deems just and proper.

## IX. JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully,

Darius Brown, Pro se

370 Lakeview Dr

Aurora, IL 60506

Phone: (708) 904-1995

brownbro1100@gmail.com

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Chicago District Office
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 01/15/2026

**To:** Mr. Darius C. Brown
370 Lakeview Dr
AURORA, IL 60506
Charge No: 440-2024-10390

EEOC Representative and email:  ALIA BRADLEY
INVESTIGATOR
ALIA.BRADLEY@EEOC.GOV

## DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 440-2024-10390.

On behalf of the Commission,

Digitally Signed By:Amrith Kaur Aakre
01/15/2026

Amrith Kaur Aakre
District Director

Cc:
Holly Kovanda
Hollywood Casino Aurora
49 W GALENA BLVD
Aurora, IL 60506

Jamie Augustinsky
Penn Entertainment
825 BERKSHIRE BLVD STE 200
Wyomissing, PA 19610

Please retain this Notice for your records.

Enclosure with EEOC Notice of Closure and Rights (05/25)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal.** You should **keep a record of the date you received EEOC's official notice of dismissal.** Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

Enclosure with EEOC Notice of Closure and Rights (05/25)

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 440-2024-10390 to the District Director at Amrith Kaur Aakre, 230 S Dearborn Street , Chicago, IL 60604.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 440-2024-10390 to the District Director at Amrith Kaur Aakre, 230 S Dearborn Street , Chicago, IL 60604.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.